FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jun 22, 2026
OFFICE OF THE CLERK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas
Fayetteville Division

In the Matter of the Search of:
Information Associated with Apple ID(s):
andressau66@gmail.com and andressau6@gmail.com
provided by Apple, Currently
Stored at HSI Fayetteville.

Case No. 5:26-cm-95

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **Information Associated with Apple IDs andressau66@gmail.com and andressau6@gmail.com, Provided by Apple and Currently Stored at HSI Fayetteville, more particularly described on Attachment A.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252<br>18 U.S.C. § 2252A | Possession, Receipt, and Distribution of Child Pornography |

The application is based on these facts:

☑ Continued on the attached sheet. **See affidavit of HSI Special Agent Gerald Faulkner.**

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ______ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GERALD F FAULKNER Digitally signed by GERALD F FAULKNER Date: 2026.06.22 11:25:55 -05'00'

*Applicant's signature*

Gerald Faulkner, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: June 22, 2026 @ 10:01am

*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Christy D. Comstock, Chief U.S. Magistrate Judge

*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with **andressau66@gmail.com and andressau6@gmail.com (SUBJECT ACCOUNTS)** that is stored at HSI in Fayetteville, Arkansas.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that has been deleted but are still available to Apple, or have been preserved pursuant to any request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, any password connected to the account, the methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account **andressau66@gmail.com and andressau6@gmail.com (SUBJECT ACCOUNTS)**, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails) during the timeframe identified in Attachment A, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages) during the time frame identified in Attachment A, the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers) covering the time period set out in Attachment A;

g. All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services for the time period set out in Attachment A;

h. All records pertaining to the types of service used during the time period set out in Attachment A; and

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken during the time frame set out in Attachment A.

## II. Information to be seized by the government

All information described above in Section I, including correspondence, records, documents, photographs, videos, applications, communications, and electronic messages, passwords, or IP logs that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s) and the passwords listed on the account.

b. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber during the time frame set out in Attachment A;

c. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including internet searches for relevant programs or information;

e. Evidence that may identify potential witnesses for the above-listed crimes, Including call logs, messages, pictures, and emails, establishing a time frame and that help reveal their whereabouts;

f. Records, documents, and image files taken with an apple device during the timeframe identified in Attachment A, which likewise corroborate the location of the device, including but not limited to any and all IP address logs and geolocation services and information available.

**Affidavit in Support of Application for Search Warrant**

I, Gerald Faulkner, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Resident Agent in Charge Office in Fayetteville, Arkansas. I have been employed with HSI since April 2009. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the areas of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I make this affidavit in support of an application for a search warrant to review, search, and seize certain information from Apple Inc. (hereafter "Apple"), a social networking company headquartered at 1 Infinite Loop, Cuptertino, CA. On May 19, 2026, Chief United States Magistrate Judge Christy D. Comstock approved a search warrant (5:26-CM-74) for the information outlined in this search warrant application. The warrant was served to Apple on May

19, 2026, and Apple then provided the information past the deadline listed in the original warrant. HSI Fayetteville downloaded the information on June 10, 2026. Pursuant to the language set forth in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019), your affiant requests that the Court issue this proposed search warrant allowing HSI to search the information identified herein, namely the production from Apple of records pertaining to the listed accounts. Said information is in the custody of the HSI in the Western District of Arkansas. The probable cause supporting the search of the material produced by Apple remains the same as when the warrant was issued to Apple.

4. For the reasons stated below, there is probable cause to believe that the information described in Attachment A contains evidence, fruits and instrumentalities of violations of the following federal statutes: (1) 18 U.S.C. § 2252 (possession, receipt, and distribution of child pornography) and (2) 18 U.S.C. § 2252A (possession, receipt and distribution of child pornography), as described in Attachment B.

5. The statements in this affidavit are based in part on information provided by HSI Special Agents, other law enforcement officers, and on my experience and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## STATUTORY AUTHORITY

6. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

7. 18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

**DEFINITIONS**

8. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

9. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

10. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

11. The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a)the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c)such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct

13. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

14. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

15. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the

ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

16. "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

17. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

**INFORMATION REGARDING APPLE DEVICES AND ICLOUD**[1]

18. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

19. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage.

1 The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

20. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

21. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

22. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

23. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

24. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

25. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

26. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

27. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

28. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services, which are accessible from both Apple devices and laptop and desktop computers. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

29. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

30. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

31. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

32. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records

of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

33. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.

## DETAILS OF INVESTIGATION

34. In November 2025, your Affiant received a request for assistance in working a child exploitation investigation. Shortly thereafter, your Affiant was assigned and received all of the downloaded files for Cyber Tipline Report number 221458202 from the National Center for

Missing and Exploited Children (NCMEC) pertaining to a flagged online incident that was believed to involve the possible sexual exploitation of a child. The flagged material was associated with a specific username submitted by Snapchat with an incident date in October 2025.

35. Snapchat provided Cyber Tipline Report number 221458202 with the following information regarding the user being reported:

- **Incident Information**
  - **Incident Type**: Child Pornography (possession, manufacture, and distribution)
  - **Incident Time**: 10/08/2025 @ 11:40:54 UTC
- **Suspect Information**
  - **Phone**: 479-XXX-6839 (Verified 08/18/2025 @ 10:09:41 UTC)
  - **Date of Birth**: 09/XX/2005
  - **Email Address**: andressau6@gmail.com
  - **Screen/User Name**: axd3xx
  - **IP Address**: 72.192.211.51 – 10/09/2025 @ 00:57:37 UTC
  - **Number of Uploaded Files**: 1

36. Your Affiant viewed the provided downloaded file linked to Cyber Tipline Report number 221458202 and determined the image to contain apparent child pornography. In November 2025, and again on April 9, 2026, your Affiant viewed and described the file as follows:

- **File Name**: axd3xx-null-52903927-cbf6-5b9d-8da6-282a9a56901a~41-0ac7c8a533-content.mp4
- **MD5**: 45c94543a0ee12dd70bd717b740d3274
- **Length**: 01:18

This video is of a believed minor male, approximately nine (9) to eleven (11) years of age who is seen from the waist up and wearing a t-shirt. The believed minor male is performing oral sex on the erect penis of a believed adult male.

37. Accompanied with Cyber Tipline Report 221458202, in the "IP Geo-Lookup (Suspect)" section was the flagged IP address 72.192.211.51 with a believed subscriber location in Springdale, Arkansas through the Internet Service Provider (ISP) Cox Communications.

38. Also contained within Cyber Tipline Report 221458202 in the "Phone Number Geo-Lookup (Suspect)" section was the flagged phone number 479-XXX-6839 with a believed "Carrier" of AT&T Mobility associated to a prepaid subscriber in Springdale, Arkansas.

39. In November 2025, your Affiant sought and obtained multiple federal summons on the accounts and identifiers flagged through Cyber Tipline Report 221458202 believed to be associated to the reported online user(s). The following results were received by your Affiant and deemed pertinent to the ongoing child exploitation investigation:

- AT&T Wireless Subscriber Information
  - Name: Andres Saucedo
  - Billing/Credit Address: 2410 Linden Circle in Springdale, Arkansas 72764
  - Activation Date: 08/18/2025
  - Account Status: Open
  - MSISDN: 479-XXX-6839
- Google Subscriber Information
  - Google Account: #####9118
  - Name: Andres Saucedo
  - Email: **andressau6@gmail.com**
  - Created Date: 01/16/2019
  - Recovery SMS: 479-XXX-6839
  - Recovery Email: **andressau66@gmail.com**
- Cox Communications Internet Subscriber Information
  - IP Address: 72.192.211.51 (10/01/2025 – 10/25/2025)
  - Customer Name: Maria Saucedo
  - Customer Address: 2410 Linden Circle in Springdale, Arkansas 72764
  - Email: saucedoaracely86@gmail.com
  - Phone: 479-XXX-1295
  - Activation Date: 09/19/2020

40. Your Affiant then conducted Department of Homeland Security (DHS) and open-source database queries on the main contacts for the aforementioned subscriber accounts. The queries revealed Andres Saucedo is believed to be **Andres SAUCEDO Mojica** with a date of birth

of 09/XX/2005 and assigned the Social Security Administration (SSA) number XXX-XX-6929. SAUCEDO is issued an Arkansas driver's license bearing the number XXXXX6170 which was issued on 10/09/25 and expires on 09/30/33. The address associated to the Arkansas driver's license is listed as being 2410 Linden Circle in Springdale, Arkansas.

41. On April 17, 2026, pursuant to the ongoing child exploitation investigation, a federal search warrant (5:26-cm-00054) was executed at **SAUCEDO's** residence located at 2410 Linden Circle in Springdale. **SAUCEDO** was encountered at the home and agreed to speak with law enforcement. During a post-Miranda interview **SAUCEDO** admitted to being the individual responsible for creating and utilizing the Snapchat account in question that was flagged by Cyber Tipline Report 221458202. **SAUCEDO** further admitted, between approximately July 2025 to November 2025, he began interacting with an unknown user on a website called "Flingster" which he described as a website known for people to visit who are "horny". While in "Flingster", the unknown user asked **SAUCEDO** if he wanted to see something crazy and then followed up by sending child pornography to **SAUCEDO's** Snapchat account. **SAUCEDO** explained that in attempts to "troll" the unknown user, he resent or distributed the child pornography file back to the unknown user's Snapchat account.

42. While the federal search warrant was being executed at **SAUCEDO's** residence on April 17, 2026, HSI Computer Forensic Analysts (CFA) conducted on-site previews of all electronic devices located at the home. During the forensic preview of **SAUCEDO's** Apple iPhone, CFAs discovered multiple files of child pornography in the deleted artifacts of the device as well as what appeared to be self-produced videos made by **SAUCEDO** of him performing sexual acts on the family German Sheppard dog.

43. Based on the newly acquired forensic information, your Affiant conducted a second post-Mirana interview of **SAUCEDO** while executing the federal search warrant at his residence on April 17, 2026. **SAUCEDO** admitted there were additional instances while he was on "Flingster" and another online application called Telegram where he would interact with other unknown online users while both participants would be looking for "perverted stuff". **SAUCEDO** explained during these online sessions, he would trade child pornography and bestiality files back and forth with the unknown user profile accounts. **SAUCEDO** further admitted to a specific time while on the Telegram platform where he sent an unknown online user the self-produced bestiality files of him and the family dog in exchange for child pornography files which he received from the unknown profile. **SAUCEDO** stated he had also possibly shared the self-produced files of him and the family dog to additional unknown online users on "Flingster". Your Affiant asked **SAUCEDO** if he has ever physically penetrated or harmed the family dog and he replied, "no". **SAUCEDO** was asked if there were any additional files of child pornography saved on any of his electronic devices to which he stated he did in fact have an active iCloud account and it was linked through either his **andressau6@gmail.com** or **andressau66@gmail.com** **(SUBJECT ACCOUNTS)**. **SAUCEDO** further explained that his Apple iPhone was currently configured to auto-sync to his cloud account so there was a possibility some of the child pornography files were unintentionally backed up to the Apple platform without his knowledge.

**<u>INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED</u>**

44. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment

B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

45. Based on the forgoing, there is probable cause to believe that the materials provided pursuant to the previously issued search warrant to Apple and which are currently in the possession of HSI within the Western District of Arkansas, that relate to information associated with **andressau66@gmail.com** and **andressau6@gmail.com (SUBJECT ACCOUNTS)** will contain evidence or fruits of violations of 18 U.S.C. §§ 2252 and 2252A and information more fully described in Attachment B. Because HSI will serve this warrant on information already in its possession, good cause exists to permit a search at any time in the day or night.

GERALD F FAULKNER
Digitally signed by GERALD F FAULKNER
Date: 2026.06.22 11:26:26 -05'00'

Gerald Faulkner
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this 22 day of June, 2026

Honorable Christy D. Comstock
Chief United States Magistrate Judge